STEPHEN HENDERSON, Defendant in Error, *v.* HENRY C. McPIKE, Plaintiff in Error.

*Contract—Payment—Damages.*—Congress possesses the exclusive power of coining money and of regulating the value thereof. If the act of Congress of Feb. 25, 1862, declaring treasury notes money and making them a legal tender, be within the constitutional power of Congress, then such notes and gold coin stand upon the same footing and each is a legal tender. In law they are equal in value, and courts can suffer no averment nor hear any

proof to the contrary. In actions on promissory notes, the measure of recovery is the sum promised, with interest. If treasury notes be not a legal tender, the plaintiff in the judgment is not compelled to accept them in payment, but may demand payment in coin.

*Error to Pike Circuit Court.*

*R. A. Campbell,* for plaintiff in error.

The terms of the agreement between the parties contemplate and provide for the contingency, that the note might not be paid at maturity ; and it is expressly stipulated in the body of the instrument itself, that the principal is to bear interest at the rate of ten per cent. per annum, and if the interest be not paid annually, to become as principal, and bear the same rate of interest ; thus agreeing upon and fixing the damages in the event of a failure to pay promptly at the maturity of the note. The court will not allow a party to travel outside of his contract in the assessment of damages, unless such extrinsic damages and the risk of their being sustained in case of a non-performance of the contract was in contemplation of the parties at the time of its being entered into. ( Chipm. on Con. 122–3. )

The judgment should have been for the amount found due upon the note in money. Whether that judgment could have been discharged with United States treasury notes under the act of Congress of February 25, 1862, making United States treasury notes a legal tender for all debts, public or private, was not a question before the court below in the trial of this cause, and it was not called upon to decide it. Such a question could only arise and be settled between the officer having charge of an execution issued upon the judgment and the defendant.

Judgment is rendered against the defendant for failure to pay gold, and damages assessed against him for the breach, equal to the difference in the speculative value between legal tender notes and gold coin at the day of trial (say forty per cent. as in this case), an execution is issued upon the judgment and is placed in the hands of the sheriff, who endorses

upon it the date at which it came into his hands, at the time he receives the execution; he has in his hands money, in gold, belonging to the defendant; is not the execution at once paid off and satisfied? Can the officer return the gold to the defendant, and demand that the execution be satisfied in legal tender notes? The laws of Congress and of this State make no distinction in the value of money, whether it be gold coin, or such other money as has been made a legal tender for debts by laws constitutionally enacted.

In this cause the rule of damages is the value of gold in United States treasury notes at the date of the maturity of the note, with interest at six per cent. up to the time of the rendition of the judgment.

The true rule of damages in such a case, is the value of the article at the time of the breach, or when it should have been delivered, and this whether the price has been paid in advance or not. (Sedg. on Dam. 273, et seq. & n.; White's Exec'r v. Saulsbury et al., 33 Mo. 150; Walker v. Borland et al., 21 Mo. 289; Funk v. Dillon, 21 id. 294; Smith et al. v. Dunlap, and authorities therein cited, 12 Ill. 184; 2 Kent's Com., 6 Ed., 480 et seq.) In the case of Walker et al. v. Borland, 21 Mo. 289, Judge Leonard, in delivering the opinion of the court, says: " In our own State it is believed the practice has been to estimate the value at the time the injury was committed, and to allow interest to the time of the trial, and we see no reason to disturb it and think it the correct rule." So also in the case of White's Exec'r v. Saulsbury et al., 33 Mo. 150.

*Henderson* and *Dyer* for defendant in error.

I. The act making United States notes a legal tender for private debts became a law Feb. 25, 1862. This act did not prohibit the buying and selling of gold, nor did it prevent the receiving of gold deposits, nor borrowing and agreeing to pay back in gold; it in no manner interfered with dealings or speculation in coin. Such a law was subsequently passed in 1864, but was found injurious and immediately re-

pealed. This was a contract, whatever its form, to pay or deliver in gold, and a failure to comply with the contract entitles the plaintiff to a judgment for ·damages arising from the breach. The judgment being rendered after the passage of the law, can be discharged in United States notes; therefore, the judgment should be for such amount as will repair the damages sustained.

II. The obligation was given for four hundred and eighty dollars of gold coin, received by the plaintiff in error, which he agreed to pay back in thirty days, with interest at ten per cent. In contracts for the delivery of articles sold, when the money has not been paid, the measure of damages is the difference between the contract price and the value of the article when it should have been delivered; but where the purchaser has paid the price in advance, or is deprived of the use of his money or property, he is entitled to the rise in the market value of the article up to the time of trial.

The reason of the difference is obvious. In the former case the plaintiff has the means to supply himself with the needed article when the breach occurs. In the latter, he cannot be presumed to have the means to supply himself. (Sedg. Meas. of Dam. 260–1–2, et seq.; 2 Burr. 1010; Clark v. Pinney, 7 Cow. 681–9; Shepherd v. Johnson, 2 East. 211; McArthur v. Leaforth, 2 Taunt. 257; Downs v. Back, 1 Stark. 254; Harrison v. Harrison, 1 Car. & P. 412; Leigh v. Patterson, 8 Taunt. 540; Cortelyou v. Lansing, 2 Cai. C. 200; West v. Wentworth, 3 Cow. 82.)

III. If the suit be brought in a reasonable time after breach, the plaintiff may recover according to the highest price, at any time between the period of delivery and the day of trial. (Chitty on Con. 445, n. 2; Williamson v. Dillon, 1 Harr. & Gill, 444; Shephard v. Hampton, 3 Wheat. 200–4; Marshall v. Campbell, 1 Yeates, 36; Lewis v. Curradan, 1 id. 37; Commercial Bank v. Kortright, 22 Wend. 348; Clark v. Pinney, 7 Cow. 681; Gray v. Portland Bank, 3 Mass. 390; Chitty on Con. 871, *a.*)

This suit was brought to the first court after breach, and prosecuted to judgment at the earliest practicable period.

DRYDEN, Judge, delivered the opinion of the court.

This was a suit on a negotiable promissory note, dated the 31st of March, 1862, payable by McPike to Henderson thirty days after its date, for four hundred and eighty dollars, in gold, with interest at ten per cent. per annum from date. McPike pleaded as a set-off, a note which he held by assignment from one Hedges, the payee, dated April 9, 1862, made by Henderson, on which there was due, one day after its date, one hundred and eighty-six dollars and ninety-one cents, with six per cent. interest. The case was tried by the court without a jury. The court computed the interest on the note sued on, and to the sum of the principal and interest added 40 per cent. thereon for the supposed difference between the value of gold coin and United States treasury notes, and from the aggregate deducted the amount of principal and interest due on the note pleaded as a set-off, and rendered judgment for the plaintiff for the remainder, $573.15. And the defendant below has brought the case to this court by writ of error.

The theory upon which the Circuit Court proceeded in this case was, that it was not only the right of the defendant to discharge the judgment to be rendered against him by the payment of treasury notes, but that he would avail himself of that right; and that as treasury notes were depreciated in the market below the value of gold coin, the plaintiff was entitled to such sum in the depreciated currency as would procure the amount of gold, the defendant by his contract had promised to pay. The theory has a fair look, but is without any legal support. The error consists in attributing to money a marketable or commercial value, and a liability to the fluctuation in price to which other property by the accidents of trade is subject; and in supposing that instead of the value of money being a thing fixed and established by

law, it was an open question to be determined by the courts in every case on the testimony of witnesses. Money is the universal medium or common standard by a comparison with which the value of all merchandise may be ascertained, or it is a sign which represents the respective values of all commodities (1 Bl. Com. 276) ; and, as such medium, has no marketable value, but possesses such standard value as the law-making power has assigned to it.

The Congress of the United States possesses the exclusive power under the constitution of coining money and of regulating the value thereof; and if it be conceded that the act of the 25th of February, 1862, declaring treasury notes money and making them a legal tender in payment of debts, is within the constitutional power conferred upon Congress, then treasury notes stand upon the same footing as gold coin ; each is a legal tender, and one no more than the other. Before the law, they are equals in value, and the courts can suffer no averment nor hear any proof to the contrary. The two media of payment being in legal contemplation of the same value, the law, to be consistent with itself, must hold that no injury results from the breach of a contract to pay in the one medium, if payment be offered in the other. Such breach is *damnum absque injuria*.

On the other hand, if treasury notes be not money and legal tenders, the judgment of the Circuit Court is equally erroneous ; because in that case, although the judgment was recovered upon the notion that it would be discharged in treasury notes at par, and was for a sum graduated by the supposed marketable value of treasury notes, the plaintiff has the right to refuse such notes, no matter in what quantity offered, and to demand payment of the whole sum recovered, no matter in what excess, in coin. In no light, therefore, in which the subject may be viewed, can the judgment of the court be maintained.

It is well settled law, that, in actions on promissory notes, the measure of recovery is the sum promised, with in-

terest, except in cases where by statute special damages are given in lieu of interest. The case at bar forms no exception to the general rule.

With the concurrence of the other judges, the judgment of the Circuit Court is reversed; and there being no dispute as to the facts in the case, this court now proceeds to render such judgment as the court below ought to have rendered, and orders that judgment be entered for the respondent for the amount of the principal and interest of the note sued on, after deducting therefrom the sum of the principal and interest of the note pleaded as a set-off, and for costs in the lower court, and that the plaintiff in error recover costs in this court.

The other judges concur.