VIVIAN ADAMS, RESPONDENT, v. PAUL LeBow, APPELLANT.—172 S. W. (2d) 874.

Kansas City Court of Appeals.  May 24, 1943.

1192

*Clay C. Rogers* and *Mosman, Rogers, Bell & Conrad* for appellant.

1194

*Benj. A. Babb* and *Robert M. Murray* for respondent.

SHAIN, P. J.—This action was instituted in the Circuit Court of Jackson County, Missouri, in 1940, by Vivian Adams, as plaintiff, filing action for damages for personal injuries against George C. Carson, owner of an automobile involved in an accident, and Paul LeBow, employee of Carson and driver of the automobile.

This cause was here once before on appeal. In the first trial an involuntary nonsuit was taken as to Carson and jury verdict and judgment were for plaintiff and defendant LeBow appealed, and the judgment was reversed and the cause remanded.

In an opinion by this court, Adams v. LeBow, 160 S. W. (2d) 826, this court reversed and remanded by reason of error committed in refusal of an instruction, offered by defendant on burden of proof.

On a retrial of this cause, verdict was for plaintiff in the sum of $5000; judgment was in accordance with the verdict, and defendant duly appealed.

We will continue to refer to the parties as plaintiff and defendant to conform with the situation in the trial court.

It is conceded in the briefs filed herein that the evidence in this trial is practically the same as in the former trial. In our former opinion, 160 S. W. (2d) 826, there appears a very comprehensive and full statement of the facts and we will, therefore, but briefly restate the same herein.

George C. Carson, engaged in the undertaking business in Independence, Jackson County, Missouri, owned and operated motor vehicles in the conduct of his business. On the morning of February 13, 1940, Mr. Carson had a call from another undertaker in Kansas City, Missouri, for a car for service. Paul LeBow, defendant herein, was an employee of Mr. Carson, and incident to said employment drove and operated automobiles in the conduct of funeral service. At the time aforesaid, Mr. LeBow was instructed to take an automobile belonging to Carson and respond to the Kansas City call. It is disclosed that the car used was one that LeBow had frequently used and had either knowledge or opportunity to know the condition of said automobile.

It appears that LeBow started upon his mission and went by and picked up a lady friend who worked at the Sears, Roebuck & Company store in Kansas City, Missouri, with the intention of taking her to the

place of her employment. It further appears that on the way his lady friend saw a young lady of her acquaintance, working also at Sears, Roebuck & Company, but not known by LeBow, awaiting a street car, and at the request of his lady friend LeBow stopped the car and on invitation this young lady, Vivian Adams, plaintiff herein, entered the car as an invited passenger to be taken to her place of employment.

The evidence shows the relative positions of the occupants to have been: LeBow at the driving wheel, his lady friend next, and Miss Adams to the right and next to the righthand door of the automobile. Miss Adams testified that shortly after the automobile started, LeBow reached across and took hold of the latch handle and slammed the door into position and remarked that they had been having some trouble in keeping the door closed. It is also shown that LeBow thereafter reached across and pulled the door inward. Thereafter, when proceeding on the journey, the door flew open and Miss Adams, the plaintiff, fell to the pavement and was injured. Thereafter, this action was brought.

On the first trial the issue was presented and tried as a *res ipsa loquitur* case. In the second trial, now before us on appeal, the case was tried as a *res ipsa loquitur* case.

The application of the *res ipsa loquitur* doctrine was raised in the former trial and the greater volume of our former opinion was devoted to a general review of that subject as applicable to the case.

In this appeal the defendant again most earnestly insists that the *res ipsa loquitur* doctrine has no application. The theory upon which defendant takes his stand is on the alleged ground that the question, as ruled in the former opinion, did not rest upon the ground that plaintiff had shown by her proof the "*exact*" cause of the opening of the door.

This court's opinion, in the former review, did not pass upon any question of plaintiff's "*exact*" knowledge of any particular defect which caused the door to open. However, in the opinion, facts of conditions shown by the evidence to have existed were commented upon for the reason that defendant's attorney had taken the position that the facts disclosed by the evidence showed that the accident occurred by reason of joint negligence of owner and driver and, therefore, the doctrine did not apply.

The question of the cause for the opening of the door was the subject of inquiry in the former trial and evidence to such was substantially the same as in the second trial. The plaintiff in her testimony herein admits knowledge of conditions, gleaned from the evidence in the former trial. There is much contradictory evidence herein as to the condition of the door and the door latch at the time of the accident, before the accident, and after the accident, as there was in the former trial. From our study of this evidence, the question of the "*exact*"

cause or exact defect is left to speculation. Defendant's evidence was to the effect that no defect existed, and plaintiff's evidence was to the effect that there was a protruding screw, loose screws, and defective wood. We find no direct evidence of the specific defect, if any, causing the door to come open. The fact, however, that the door did fly open and that plaintiff fell to the pavement, is established by direct and exact evidence. We conclude that one, with all of the evidence in both hearings before him, would be in the field of speculation if he should attempt to allege the "exact" negligence causing the door to fly open. In light of the above and fact of issue being passed upon in the former opinion, we rule against defendant on his point as to the *res ipsa loquitur* doctrine, and therefore conclude no error in plaintiff's instruction No. 1 which submits the case on said doctrine.

The question of injection into the case of liability insurance is urged as error by defendant under several specifications of error.

Error is charged as to inquiry of jury when impaneling, and concerning also references made at the same time concerning the actions of Mr. Johnson who was designated as agent of the Travelers Indemnity Company. Error is further charged as to argument before jury as to the actions of Johnson. Error is also charged in plaintiff's argument before the jury concerning collection of judgment, if had.

The rules concerning reference to, or injection of, liability insurance, have been the source of such confusion. The writer's personal view is that it often happens that more disastrous results occur in attempting to avoid the knowledge of insurance than would result otherwise.

In many cases the retained lawyers of insurance companies are in charge of the defense. One who had reviewed many cases, wherein the above is a fact, realizes how impossible it is to keep such fact from the jury, and the fact that the defendant is trying to keep the fact from the jury creates an unfavorable psychological effect.

The question of arguments before juries which insinuate insurance, is also the bane of trial and appellate courts. This situation becomes more complex when justification is claimed upon ground of answering something said by opposing counsel.

The situation concerning the injection of insurance is so different in different cases that question as to precedent is complicated and generally each case must be determined upon its record.

In the case at bar we are confronted with a situation wherein the employer and owner of the automobile is not a party. The defendant herein is an employee of the owner of the automobile, but no question of respondeat superior is involved.

It is disclosed by the record that the employer and owner of the car had an indemnity policy issued to him by the Travelers Indemnity Company. It is also disclosed that this policy has a provision for coverage for any one operating the car under the limitations ex-

pressed. Under this provision plaintiff was contending that LeBow was insured, and defendant contending that he was not insured.

At the commencement of procedure in the trial the attorney for plaintiff, in a preliminary hearing in chambers, announced that he expected to make inquiry of the jury concerning the Travelers Indemnity Company. The attorney for defendant took issue and colloquy between counsel and court followed and evidence was produced before the court wherein it was disclosed that defendant's attorney was there present as an employee of the insurance company conducting the defense.

After a complete hearing, out of the presence of the jury panel, the trial court ruled that the facts and circumstances disclosed in the hearing justified the permtting of plaintiff's counsel to make the usual inquiry allowable under the rules. We conclude that the situation, as presented before the trial court, justified his ruling.

In the record there is set forth an excerpt of *voir dire* examination wherein it is shown that attorney for plaintiff made inquiry as follows: "Was or are you employed by the Travelers Indemnity Company, an insurance company that writes automobile insurance?" No specific objection was made to this question. However, prior to the questioning of the jury on *voir dire* and out of the hearing of the jury, defendant did make a general objection to any inquiry of the jury concerning their interest in an insurance company, but this objection was made on the theory that the defendant LeBow did not have insurance. We have *supra* ruled that question against defendant. It is our conclusion that such general objection is not sufficient to apply to the above specific question and call for a ruling of the trial court on its competency. There being otherwise no proper and sufficient objection to such question, we are not called upon to pass upon its propriety.

Inquiry was also made as to whether jurors or members of family were employed by said company. Further inquiry was made concerning ownership of stock in company, and as to whether any of jury was acquainted with a Mr. Johnson who, at one time, was in the employ of the company, and in conclusion the jury was asked if there was any reason why any of them should not serve.

Thereafter, and out of the hearing of the jury, the following is shown:

"MR. ROGERS: Now, because of the question propounded to the jury by plaintiff's counsel, clearly indicating there is an insurance company interested in the outcome of this case, I move the Court to discharge the panel because of the statement of counsel in referring to the Travelers Indemnity Company, that it is an insurance company and writes automobile insurance, as an indication to the jury that there is an insurance company interested in the result of this controversy and interested by being obligated by the result. The point

that I make is that it was wholly unnecessary for the purpose of interrogating the jury respecting whether or not they were connected with this company named, to give the jury the gratuitous information that the company was engaged in the business of writing policies of insurance on automobiles; and because of the effect of that misconduct on the part of counsel, and the improper questions, I move the Court to discharge the panel for the reason that this defendant is prejudiced in his rights before this jury panel.

"THE COURT: Overruled.

"To which ruling and action of the Court the defendant at the time duly excepted and still excepts."

If an insurance company is shown to be interested in a financial way in the result of the trial, the plaintiff in examination of *voir dire* is entitled to, in a legitimate way, make inquiry touching relations of jurymen, if any, to the insurance company having such interest.

In an opinion by the Supreme Court of Missouri, Maurizi v. Western Coal Co., 11 S. W. (2d) l. c. 274, it is said: "We know of no rule requiring a foundation for the examination of the members of the panel as to their qualification to serve as jurors. The foundation is the right of a litigant to know the relation of the members of the panel to the parties and *those interested in the result of the case.*" (Italics ours.)

Mr. Rogers, counsel for defendant, on inquiry in chambers, stated: "I shall say that I intend to send to the Travelers Insurance Company a bill for whatever I perform in this case. I do not intend to send Paul LeBow any bill for services in this case."

We conclude that the trial court was not in error in its ruling, *supra*. The question as to bringing the question of insurance, directly or indirectly, before the jury in the progress of the trial is materially different from examination on *voir dire*. It is almost impossible to find controlling precedent for specific rule by which to determine the question as to whether the injunction of insurance before the jury by question or argument does not constitute reversible error.

Within the bounds of reason, the rulings of the trial court, who is in a much better position to rule on such matters, should be upheld if within sound discretion.

In the course of the trial the defendant was being cross-examined by plaintiff's counsel, and the following is shown of record:

"Q. You took a Mr. Johnson out there to the hospital to talk with Miss Adams and stood there while he questioned her and took a written statement from her, didn't you?

"MR. ROGERS: I object to that as improper cross-examination.

"MR. MURRAY: This is to lay a foundation."

(Outside the hearing of the jury.)

"MR. ROGERS: If he insists on asking about Mr. Johnson—

"THE COURT (Interrupting): Who?

1200

"Mr. Rogers: Johnson—he claims he was out there and took a statement from Mrs. LeBow. He is trying to show that there was some other interest in the case at the time. You know that is improper."

Thereafter, and out of the presence of the jury, counsel explained to the court that the defendant, shortly after the accident, took Johnson to the hospital and stood by while Johnson was taking a written statement and called attention to the fact that counsel for defendant had asked defendant about whether or not he had talked with plaintiff in the hospital. Counsel for defendant objected to the question, *supra*, and moved that the jury be discharged by reason of said question being asked before the jury.

It appears that counsel for plaintiff did not have in his possession any written statement made by plaintiff and the trial court made ruling as follows:

"The Court: The Court will call attention to the fact that we had quite a hearing on this matter and I am thoroughly convinced that counsel was in good faith and believed that statements were made by the plaintiff in the presence of the defendant, as he purported to believe, *but having been assured and satisfied by counsel for the defendant that no such statement is in writing* or could be produced, the objection is sustained to the question. But the request to discharge the jury is refused." (Italics ours.)

Directly after the above ruling, counsel for defendant offered in evidence a statement in writing made by plaintiff on February 14, 1940, one day after the accident, but such statement disclosed facts different from the alleged statement referred to by the court as having been denied by counsel for defendant. We conclude no error in the above ruling.

After a careful study of the record touching the injection of the name Johnson into the trial, and giving weight to language of the court's ruling, supra, we conclude no reversible error is shown as to the same.

In the argument to jury by plaintiff's attorney, the following appears:

"The Court tells you that nine of you men can agree on a verdict, and I want you to agree on that amount. If all twelve of you can't agree on $7,500 then stay out until nine of you can bring in a verdict of $7500. That is the verdict we want and the verdict she is entitled to and that verdict of nine is just as good as if twelve signed it. It isn't in your province to worry about whether the judgment will be paid.

"Mr. Rogers: I object to that as improper argument and prejudicial.

"Mr. Murray: Well he made a point, Your Honor, about this poor boy being stuck with a judgment and I have a right to answer.

"THE COURT: Overruled.

"To which ruling and action of the Court, the defendant at the time duly excepted and still excepts.

"MR. ROGERS: Then I will make my objection: I object to counsel arguing about how or when or in what capacity or manner the judgment may be collected or what the jury has to do with the collection of a judgment, for the reason that it is improper and prejudicial and an attempt to indicate to the jury that there will be some other method of collection other than by prosecution against the defendant.

"THE COURT: Counsel isn't going to do that. If he does I will discharge the jury.

"To which ruling and action of the Court, the defendant at the time duly excepted and still excepts.

"MR. MURRAY: The only point I am making, gentlemen, is this: This man is a working man and this judgment will be against him, and I say that it is my duty to handle this lawsuit and try it against anybody I want to who is liable for this accident and it is my duty to collect this judgment, and it isn't your affair whether I can collect it or whether I can't. . . ."

No objection is shown as taken to the above remarks of defendant's counsel.

The plaintiff urges in justification of his remarks before the jury, that same was called for to answer argument made to jury by defendant's counsel.

It is shown that counsel for defendant in his argument, in referring to plaintiff, had said: "She has one suit against him $25,000 and on the twenty-first day of May, 1941, she filed another suit against George Carson for $25,000."

Plaintiff made objection to the above on the ground that there was no evidence to the effect that plaintiff had filed suit against Carson. Thereafter the colloquy and ruling, *supra*, occurred.

Thereafter, counsel for defendant continued as follows:

"MR. ROGERS: Well gentlemen of the jury, let me say this to you: I appeal to you as reasonable men. Is there one word of proof in this case that that young man was responsible in the slightest degree for any condition of that door latch? Why it stands admitted here that he didn't own that automobile. It stands admitted here that he was only a hired hand. We can look at these admitted facts and come to some sensible conclusion about this thing ourselves. And to try to pin the burden of this thing on him when he didn't own this automobile and didn't have any authority to go taking it out and having it repaired, and didn't know anything about it, is wrong—and it is wrong in anybody's language. And if this lawyer who represents this lady knows where the fault, if there was one, lies, then he knows how to go after the man who was at fault, and not after this boy."

Passing alone on the question of argument before the jury, the record shows that opposing counsel were on their mettle in urging their respective theories. The trial court had the best opportunity for judging in such matters. The trial court not only gave consideration when objections were made, but gave consideration again on hearing on motion for new trial. After careful consideration of the showing of the record, we conclude we would not be justified in ruling that the trial court was in error in its ruling on the point presented as to argument.

The defendant urges error in admitting evidence of Emmett Thomas, Charles E. O'Malley and James A. Butler. These witnesses were called by plaintiff in rebuttal. Thomas and O'Malley were mechanics and Butler a photographer.

Thomas and O'Malley had been witnesses in the former trial and in the examination herein they were questioned concerning certain evidence they had given in the former trial, and the inquiry was also being made concerning photographs, exhibits in the case, which photographs had been taken by Butler. There had been testimony on the part of the defendant as to condition of the car door before and after the accident and these witnesses were called in rebuttal as to said condition of the door. Defendant based his objection on claim of too remote and immaterial.

Practically the same question, and based upon practically the same objection, was raised as to the testimony of Thomas and O'Malley in the former appeal and was ruled against defendant, and as to the same we rule herein against defendant.

The defendant makes point as follows:

"The court erred in striking from the evidence plaintiff's petition in her case against George Carson for damages arising from the same accident, and the court erred in refusing to permit defendant's counsel to refer to that petition in argument.

"The petition was competent to show plaintiff's knowledge of specific cause, and, therefore, the inapplication of the *res ipsa loquitur* doctrine.

"A petition or other pleading of party is always admissible in evidence as an admission."

The above presents an assignment that requires serious consideration.

In Missouri there is a well-settled rule to the effect that wherein any case is on trial and the pleader has pending in another suit a pleading which states facts relative to the issue being tried, then the pleading in such other suit is admissible to be read in the suit on trial as an admission.

The record herein discloses that the petition in the case of Adams, plaintiff herein, and against Mr. Carson, the owner of the automobile herein involved, and concerning the accident herein involved, was

offered in evidence without objection and filed and marked as an exhibit in this case.

We conclude that the Carson petition was properly admitted in evidence.

The trial court during oral argument of defendant's counsel, *supra*, struck out the aforesaid exhibit of petition in Carson's case, stating that the same had been admitted under misapprehension and the court added, "There is no evidence in here of a suit against him pending now."

The question as to whether or not the whole incident concerning the Carson case petition constitutes reversible error, calls for careful consideration.

In the rightful administration of justice, caution is justified in application of general rules to specific facts and circumstances.

According to the defendant's own theory, as expressed in his point, the sole reason given for offering and permitting the petition in evidence, was on the issue of *res ipsa loquitur*. Such issue is for the court and not for the jury. The petition was admissible in respect to any admission as to issue involved in the case on trial. The petition in question is included in the record herein and we conclude from a study thereof that the same is admissible on issue of *res ipsa loquitur*. However, we conclude that the same is not admissible for the purpose of merely showing fact of the filing of another suit and the amount sued for therein, as such matters were not in issue in the jury trial of the suit at bar.

Under the showing of the record herein it is reasonable to infer that the court's ruling was with the above fact in mind.

We conclude that defendant's counsel in the zeal of argument went beyond his rights in his remark set forth above, and in so far as to any issue that was for the jury is concerned, the court's ruling, if error, is harmless.

As to the question of *res ipsa loquitur*, we have ruled, *supra*. We will only add here that we had before us the petition in the Carson case and gave consideration of the same, together with all facts and circumstances shown in evidence in passing upon the *res ipsa loquitur* question. We here call attention to the fact that while said petition narrates as to conditions revealed by the evidence in the former trial, no specific negligence is based thereon. The allegation of negligence charged in the Carson petition is in the allowing and permitting plaintiff to sit next to the door. Such allegation is not out of harmony with the *res ipsa* doctrine. Further, in this second trial our former opinion constituted the law of the case and we conclude that there are not such new facts shown as would justify us in reversing the present judgment by reason of the fact that the trial court struck from the record, during oral argument of the case, a petition which constituted cumulative evidence touching a question of law for the court and

1204

not offered or claimed by counsel for defense as going to issue of fact for the jury.

Defendant urges that the verdict and judgment are excessive. We conclude that there is evidence that reasonably sustains the verdict. In two trials jury verdict has been for plaintiff. The amount of the verdict in the first hearing was for $4500, and in the second was $5000. The question of excessive verdict has twice been passed upon by the trial court in consideration of motions for new trial.

We conclude that we would not be justified in reversing or ordering *remittitur* by reason of excessive verdict.

In our review we have had in mind that there have been two jury trials with approximately the same result, and conclude that there is no such prejudicial error shown in the record as justifies a reversal of judgment and remanding of cause for another trial.

The judgment is affirmed. *Bland* and *Cave, JJ.,* concur in result.