**Janice STANTON, U.S. Trustee for the Bankruptcy Estate of Anthony King and Sandra King, Appellant,**

v.

**James HART, D.O., Respondent.**

**No. WD 73663.**

Missouri Court of Appeals, Western District.

Nov. 15, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2011.

Application for Transfer Denied Jan. 31, 2012.

---

**1.** All references to statutes are to RSMo 2000, unless otherwise specified.

Herbert McIntosh, Kansas City, MO, for Appellant.

Diana Jordison, Kansas City, MO, for Respondent.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Janice Stanton, trustee for the bankruptcy estate of Anthony and Sandra King, appeals the circuit court's judgment following a jury verdict in favor of James Hart, D.O., on Stanton's claims of medical negligence. First, Stanton contends that the court erred in rendering a judgment against her, asserting that the court lacked jurisdictional authority. Second, Stanton argues that the court erred in prohibiting reference to her as plaintiff and prohibiting evidence regarding the Kings' bankruptcy or financial status, thereby depriving her of her right to testify and present evidence of damages. Finally, Stanton claims that the court erred in denying her motion to amend her petition to add a new defendant. We affirm the circuit court's judgment.

On November 6, 2007, Anthony Lynn King and Sandra Kay King filed suit against Dr. James L. Hart, among others, for alleged medical negligence in connection with a stroke suffered by Anthony King. On March 10, 2008, the Kings voluntarily dismissed their suit and, thereafter, filed a petition in bankruptcy. On March 10, 2009, Janice E. Stanton, trustee for the Kings' bankruptcy estate, commenced a new suit against the same defendants named in the previous suit. When the trial began on November 8, 2010, nearly all defendants, except Hart, had settled prior

to trial or were voluntarily dismissed.[1]

Stanton's suit alleged that Hart failed to diagnose a stroke suffered by Anthony King, failed to initiate proper emergency treatment, failed to give adequate information and history to Anthony King's radiologist, and failed to advise Anthony or Sandra King that time was of the essence in treating Anthony's condition. Stanton claimed that as a direct result of Hart's negligence, Anthony King suffered severe injury and permanent disability and suffered monetary damage in the form of medical expense, lost wages, and the inability to earn an income. Stanton further contended that Hart's negligence deprived Sandra King, Anthony King's wife, of her husband's care, comfort, services, consortium, companionship and support.

Prior to trial, Hart filed motions *in limine* to prohibit, among other things, the introduction of evidence regarding the financial status of the parties. Hart considered such evidence irrelevant to substantive issues and potentially prejudicial. Stanton disagreed. She responded that the financial information was relevant and that there would be evidence of the Kings' financial status at trial. Further, she stated that her status as bankruptcy trustee would make the Kings' financial condition plainly apparent to the jury. Hart then moved to strike Stanton as plaintiff, on the grounds that several co-defendants had settled claims with the Kings' bankruptcy estate, making Stanton contractually entitled to funds sufficient to settle the estate. Hart claimed, therefore, that Stanton was no longer the real party in interest and that the Kings had a superseding equitable interest. In the alternative, Hart applied for a continuance to allow Stanton to settle the estate. Stanton opposed the motion indicating that the date the bankruptcy estate could lawfully close was unascertainable and a continuance would work a severe injustice upon her.

The circuit court denied Hart's motion to strike Stanton as plaintiff and denied his request for a continuance. In addressing Hart's motion *in limine,* concerning disclosure of the Kings' financial status, the court barred reference to the parties' financial status and barred reference to Stanton as plaintiff or as trustee for the Kings' bankruptcy estate. The court determined that, in all matters before the jury, the Kings would be referred to as plaintiffs and their names would be used in the verdict directors and verdict forms presented to the jury. The court stated that the judgment, however, would be entered with Stanton as plaintiff. Stanton objected on the grounds that she was the real party in interest, that she had a right to testify as to her role in the case, and that issuing a judgment contravening the verdict might result in an invalid judgment.

At the close of the evidence, the circuit court, in congruence with its prior determination and over Stanton's objection, supplied jury instructions and verdict forms that named the Kings as plaintiffs. The jury returned a verdict in favor of defendant Hart. The court then entered a judgment in favor of Hart and against Stanton. Stanton appeals.

In her first point on appeal, Stanton contends that the circuit court erred in entering a judgment against her, claiming that the court had no jurisdiction to do so. In essence, Stanton asserts that the court divested itself of any authority to enter a judgment when it replaced her name with the names of the individuals whose bankruptcy estate she represents as plaintiffs

---

1. On January 14, 2011, Stanton filed a stipulation for dismissal with prejudice for defendants St. Luke's Hospital of Kansas City and Dr. Jeffrey Kunin.

on the jury instructions and verdict forms. Stanton contends that this was improper because she is the actual plaintiff, she does not represent Anthony or Sandra King's interests, and the Kings lacked standing to sue and were not parties to the suit. She maintains that because "non-parties" to the suit were named on the instructions and jury forms as plaintiffs, these forms failed to submit disputed issues between the actual parties. The resulting verdict against the non-parties, she contends, precluded a valid judgment against her. We disagree.

"[T]he subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). "Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts" as "original jurisdiction over all cases, and matters, civil and criminal." *Id.* When Stanton filed her civil suit in the circuit court, the court assumed jurisdiction over her case. Stanton fails to adequately explain how the circuit court lost jurisdiction to thereafter render a judgment. Suits are often maintained under names other than those most directly affected, such as subrogation cases brought in the name of the insured but for the benefit of the insurer. Suits are even brought under fictitious names, such as "John and Jane Doe," to protect the privacy rights of some litigants. In none of these cases is it argued that a court "loses" jurisdiction.[2] While novel, Stanton's argument is meritless.

While Stanton insists her claim is one of lost jurisdiction, and not instructional error, her explanations for the court's loss of jurisdiction suggest instructional error. She contends that the instructions and verdict forms failed to submit disputed issues to the jury. However, she makes no argument that the court's instructions misdirected, misled, or confused the jury and resulted in prejudice, necessary findings in instructional error. She further claims that the court lost jurisdiction by substituting the Kings' names as plaintiffs on the verdict forms and then rendering judgment against her, which substantively amended the jury verdict. We find no error.

"Whether a jury was properly instructed is a question of law that this court reviews *de novo*." *Edgerton v. Morrison*, 280 S.W.3d 62, 65 (Mo. banc 2009). "An issue submitted by an instruction must be supported by the evidence." *Id.* "Reversal for instructional error is appropriate when the instruction misdirected, misled, or confused the jury and resulted in prejudice." *Id.* at 66. Rule 84.13(b) prohibits reversal of any judgment unless the circuit court committed error that materially affected the merits of the action. A verdict form is not an "instruction," but merely "the medium to record the decision of the jury." *Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97, 105 (Mo.App.2006) (quoting *Davis v. Stewart Title Guar. Co.*, 726 S.W.2d 839, 857 (Mo.App.1987)).

To facilitate the court's exclusionary order, discussed below in point two, the court replaced Stanton's name with Antho-

---

2. The court appears to have recognized this. The court stated to the parties:

> I don't think this is any different and, in fact, is analogous to a minor case where you have a minor with a parent or whoever might be appointed next friend for the minor. It's not the parent or next friend's name on the verdict director. It's the minor's name that goes on the verdict director under Missouri law. And if there's a judgment, the judgment is entered in favor of the next friend on behalf of the minor child. I think this is identical to that situation.

ny and Sandra King's names in all matters before the jury. Stanton's petition for damages and the evidence Stanton produced in support of that referenced the Kings' injuries and the Kings' damages. The only names the jury heard, associated with Hart's alleged medical negligence, were Anthony and Sandra King. The Kings were the individuals who, the evidence suggested to the jury, were the plaintiffs. Thus, the court's denomination of the Kings as the individuals whom the jury should find Hart had harmed, if they so found, could not have confused or misdirected the jury. The court altered no substantive issues and gave no instructions to the jury not supported by the evidence. Stanton concedes that the elements of the underlying malpractice claim, and the defenses to that claim, did not vary depending on whether she or the Kings were the named plaintiffs. The court had the authority to exclude prejudicial evidence and reasonably acted upon that authority. Introducing Stanton's name, a name that the jury had not heard and that had no relevance to the central issue the jury was to decide, could have resulted in both confusion and prejudice. The name substitution did not prejudice Stanton, and she makes no such claim.

Stanton contends, however, that the court had no authority to make the substitution and that, once having made it, had no authority to enter a judgment contrary to its results. She charges that, because she was the true plaintiff, failure to identify her as such on the jury instructions and verdict form meant that the court could not render judgment against her because the jury did not return a verdict against her. She states that "[a] party to an action is a person whose name is designated on the record as plaintiff or defendant." (quoting *Cooper v. Barr*, 413 S.W.2d 219, 221 (Mo.1967)). Because she is the named plaintiff and the jury returned a verdict

against a non-party, the court lacked authority to enter a judgment against her. We disagree.

It may be worth noting that the plaintiff, as set forth in Stanton's petition, is: "Janice E. Stanton, U.S. Trustee for the Bankruptcy Estate of Anthony Lynn King and Sandra Kay King." The only address Stanton provides under plaintiff is the address of Anthony and Sandra King. Nevertheless, this court in *Asmus v. Capital Region Family Practice*, 115 S.W.3d 427, 436 (Mo. App.2003) stated the following with regard to those named as parties in suits:

> Under common law rules, every action had to be instituted in the name of the person who had legal title, right, or interest, regardless of whether that person had a beneficial interest. 'Real party in interest' statutes were adopted to broaden pleading requirements to permit the person beneficially interested to sue in his or her own name.... Thus, in accordance with this use of term, it is not incorrect to say that the bankruptcy trustee was the 'real party in interest' in this matter, although the 'real party in interest' rules were originally adopted more for including the beneficially interested parties than for excluding them.... The 'real party in interest' rules and other rules concerning parties are designed primarily to get the right parties into the case and before the court. We find no indication that they were designed to create a procedural trap for the unwary.

While the above statement was in reference to amending pleadings to add or substitute a party, we find the sentiment, regarding "real party in interest" rules not being intended to create "procedural trap[s]," applicable to this case. The fundamental issue in this case, as pled by Stanton, was whether Hart caused damage

to the Kings through medical negligence. The fact that the Kings' bankruptcy bestowed upon Stanton the legal right to pursue and collect on that alleged negligence did not change the substantive issue of the case. All evidence proffered by Stanton related to Anthony and Sandra Kings' harm and damages. While not the "real party in interest," the Kings were, in the words of Stanton's attorney, "of interest" and "beneficiaries of the trust should the trust recover." Clearly, without the Kings, Stanton had no claim. The court's substitution of the Kings' names as plaintiffs in lieu of Stanton's name was an instructional decision that did not affect the merits of the case and never divested the court of jurisdiction.

Stanton's claim that the court disregarded the verdict of the jury when it entered judgment against her is also without merit. " '[T]he verdict of the jury, to serve as a basis for a judgment, should be clear, intelligible, consistent, certain; and it should import a definite meaning free from ambiguity and should show just what the jury intended.' " *Ralston Purina Co. v. Kennedy*, 347 S.W.2d 462, 466 (Mo.App. 1961) (quoting 89 C.J.S. Trial § 496, pp. 157, 158). The court's subsequent judgment must be based on the verdict. *Meffert v. Lawson*, 315 Mo. 1091, 287 S.W. 610, 612 (1926). A court may not amend the verdict as to "matters of substance required to be passed on by the jury, which, in their nature, are essential to the determination of the case and subject to dispute." *Id.* Here, the jury returned a verdict in favor of Hart on the only substantive issue in the case, Hart's alleged negligence. There is no confusion as to that. The court subsequently entered judgment in favor of Hart. The court's judgment was in accord with the verdict of the jury and did not substantively amend the verdict.

Therefore, we conclude that the court did not err in replacing Stanton's name with Anthony and Sandra Kings' names on the jury instructions and verdict forms or in rendering judgment against Stanton. The instructions did not misdirect, mislead, or confuse the jury and did not prejudice Stanton. The court had jurisdiction to render judgment, and the judgment was in accord with the jury's verdict. Point one is denied.

In her second point on appeal, Stanton claims that the court erred in prohibiting the parties from referencing Stanton as plaintiff or as trustee for the Kings' bankruptcy estate, and in prohibiting evidence regarding the Kings' financial status. She contends that her right to testify and present evidence was impinged. She maintains that the court should have allowed testimony as to her status as bankruptcy trustee, as well as evidence regarding the bankruptcy, because, in part, the bankruptcy constituted recoverable damages. We find no error.

"The trial court is vested with broad discretion regarding rulings on the admission of evidence[.]" *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 819 (Mo. banc 2000). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

The record reflects that the court carefully considered the potential prejudicial impact of disclosing the Kings' financial status to the jury. After consideration, the court determined the bankruptcy to be irrelevant and immaterial to substantive issues but potentially prejudicial to the parties. Hart's motion *in limine* first brought the matter before the court out of concern that disclosure of the Kings' finan-

cial status would prejudice him. After excluding the evidence and in responding to Stanton's motion to reconsider, the court expressed concern that bankruptcy information could prejudice Stanton as well. The court stated:

> [I]f Stanton would come in and testify, it's going to raise issues of whether she can be cross-examined about the money that's coming into the estate, what the purpose of her role is in this thing, what the procedures are for bankruptcy. I understand the plaintiff doesn't want to get into it, but if you put her up there, I think you would open the door to those kind of issues which would make this trial about something other than what it's about, which is a jury determining whether or not the defendant has any liability for claims that have been made and, if so, what the damages of the plaintiffs are.

■ Thus, the court premised its exclusionary ruling on concern that the jury might be influenced by irrelevant issues and that one or both parties could be harmed as a result. This concern was not unreasonable. It is a "well established general rule" that a plea of poverty "is immaterial to the issues of the case" and is improper in the trial of the law suit. *Conrad v. Twin Oaks, Inc.*, 344 S.W.2d 286, 288 (Mo.App.1961).

> The usual purpose of such a plea is to arouse jury sympathy for a party through the mention of circumstances of poverty and hardship beyond the issues of the case. *Id.* It is the converse of the mention of insurance, occasionally adroitly injected into a case for the purpose of prejudicing the jury in favor of a party by inferring a substantial verdict will not have to be paid by the losing litigant but rather by a wealthy insurance company. *Id.*

Here, Anthony and Sandra King, allegedly harmed by Hart's negligence, have fallen into great financial difficulties. The court's concerns, that the Kings' bankruptcy could have prejudiced Hart, were reasonable. Further, Stanton had already entered into financial settlements with other defendants, in relation to Anthony King's stroke, and had potentially already garnered enough money to settle the Kings' bankruptcy estate. The court's concerns, that such information could prejudice Stanton, were also reasonable.

Nevertheless, Stanton contends that Hart's negligence caused or contributed to the Kings' bankruptcy. She insists that evidence regarding the bankruptcy was relevant and central to her claim for damages and, therefore, should have been allowed. She maintains that the court's ruling deprived her of her right to testify and present evidence regarding recoverable damages. However, in her brief Stanton acknowledges that, "[i]f viewed only as a claim of error on admissibility of evidence on damages, the error does not require reversal." Stanton's counsel conceded at oral argument that, in light of the jury's verdict refusing to impose liability on Hart, any error concerning the admission of evidence relevant to damages would not justify reversal. Given Stanton's recognition that the limitations on her damages evidence could not constitute reversible error, we need not further address this aspect of her argument under her second point.

Consequently, the circuit court did not abuse its discretion in prohibiting reference to Stanton as plaintiff or as bankruptcy trustee or in prohibiting evidence regarding the parties' financial status. Such was irrelevant to substantive issues and potentially prejudicial. Point two is denied.

■ In her third point on appeal, Stanton contends that the circuit court erred in denying her motion to amend her petition to add Hart's employer, Metro Emergency Physicians, as a defendant and in quashing post-trial subpoenas related to the motion. She contends that just before trial she received a copy of Hart's employment agreement, which confirmed that Metro Emergency Physicians, and not St. Luke's Hospital as pled in her petition, was Hart's true employer.

Testimony in this case began on November 10, 2010. On November 15, 2010, Stanton asked to add Metro Emergency Physicians as a defendant. On November 16, 2010, the jury rendered a verdict in favor of Hart. On March 7, 2011, the court granted Hart's motion to quash Stanton's subpoenas and denied Stanton's motion to amend, concluding that the motion was moot because the jury had returned a verdict in favor of Hart and judgment had been entered accordingly. We find no error.

■ We review Stanton's claim for abuse of discretion. Stanton offers reasons as to why the court should have allowed her amendment, but she offers nothing as to why her motion is not moot. She singularly contends that "the outcome of the suit on its merits is irrelevant to the issues that surround adding or changing a party before final judgment is entered." On the facts of Stanton's case, we disagree. Stanton admits that the liability of Metro Emergency Physicians is vicarious. "[R]espondeat superior imposes vicarious liability on employers for the negligent acts or omissions of employees or agents as long as the acts or omissions are committed within the scope of the employment or agency." *Lindquist v. Scott Radiological Group, Inc.*, 168 S.W.3d 635, 655–56 (Mo. App.2005). "If an employee is exonerated from liability because the employee has

not committed a tort," the employer is also exonerated. *Davis v. Lambert–St. Louis Intern. Airport*, 193 S.W.3d 760, 765 (Mo. banc 2006). Here, the jury verdict of November 16, 2010, absolved Hart of liability, thereby absolving Hart's employer, Metro Emergency Physicians, of liability. The circuit court did not abuse its discretion in denying Stanton's motion to amend her petition or in quashing subpoenas related to the motion, as the court was correct in finding the motion moot. Point three is denied.

We, therefore, conclude that the circuit court had jurisdiction to enter a judgment, that the court's judgment was in accord with the verdict of the jury, and that the court did not err in entering judgment against Stanton. We also conclude that the circuit court did not err in ordering the parties to refrain from referencing the parties' financial status and from referencing Stanton as plaintiff or as bankruptcy trustee. Such was irrelevant to substantive issues and potentially prejudicial. Finally, we conclude that the circuit court did not err in denying Stanton's motion to amend her petition and in quashing related subpoenas, as the jury verdict in favor of Hart rendered her motion moot. We affirm the circuit court's judgment.

All concur.